UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TERRY HAYES, | ) | Case No.  3:05 CV 2958 |
| | ) | |
| Petitioner, | ) | Judge John R. Adams |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| KHELLEH KONTEH, WARDEN, | ) | |
| | ) | |
| Respondent, | ) | Magistrate Judge James S. Gallas |
| | ) | |

Petitioner Terry Hayes, who is currently serving a cumulative 10-year sentence for aggravated robbery with gun specification, robbery, and escape,  seeks to overturn his convictions under 28 U.S.C. §2254 on three grounds.    This matter has been referred to the undersigned for report and recommendation and the undersigned finds that Hayes has exhausted his state remedies with respect to the his  three grounds, which he pursued in his Ohio R.  App. P. 4(A) direct appeal. See *State v. Hayes*, 2004 WL 2785290, 2004 - Ohio - 5460 (Ohio App. 6 Dist.), *appeal not accepted*, 105 Ohio St.3d 1516, 826 N.E.2d 314 (Table 2005).[1]

> **Ground One**: **The Court's verdict is against the manifest weight of the evidence.**
>
> Supporting
> Facts:        There was no evidence offered by any accomplice or other witness to the crime. There was no confession.  There was no forensic evidence.  None of the stolen money was recovered and the investigator never retrieved anything from Petitioner or his residence that connected him to the robbery.  Petitioner was convicted without any relevant probative proof of his identity as the perpetrator of this crime which violated Petitioner's constitutional right to due process.

---

[1]  Hayes also made two unsuccessful attempts to reopen his appeal under Ohio R. App. P. 26(B), which attempted to raise issues irrelevant to the three grounds he is currently raising.(See Ex. 17-22, ECF # 10).

3:05 CV 2958                                         2

Respondent contends that this ground consists only of a noncognizable challenge to the manifest weight of the evidence.   Although the ground begins stating this claim under the manifest weight of the evidence, it ends by raising a claim of constitutional due process. The state appellate court addressed this argument as only a manifest weight of the evidence claim (See *Hayes*, 2004 WL 2785290 ¶¶ 14, 17-22), even though Hayes briefed a due process challenge to the sufficiency of the evidence under *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (l979).   (See Appellant's Brief, pg. 4, Ex. 11, Memorandum in Support of Jurisdiction, pg. 10, Ex. 15). There are four situations where the state courts have been given a fair opportunity to address a constitutional claim when the legal and factual basis of the federal claim was presented: " (1) the petitioner phrased the federal claim in terms of the pertinent constitutional law or in terms sufficiently particular to allege a denial of the specific constitutional right in question; (2) the petitioner relied on federal cases employing  constitutional analysis in question; (3) the petitioner relied upon state cases employing the federal constitutional analysis on the claim; or (4) the petitioner alleged facts well within the mainstream of the pertinent constitutional law." *McMeans v. Brigano*, 228 F.3d  674, 681 (6th Cir. 2000), *cert. denied*, 532 U.S. 958 (2001); *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).   Under the foregoing standard  Hayes' "fairly presented" the sufficiency of the evidence claim and the state courts, consequently,   failed to address this argument despite its "fair presentation" to them.[2]

_____

[2] Under Ohio S.Ct.Prac. R. VI, §2(4) the Ohio Supreme Court  considers both the arguments and the propositions of law, and consequently the state court did have a fair opportunity to address the sufficiency of the evidence claim under *Jackson*.

3:05 CV 2958                                3

Due to the state courts' failure to consider the claim that there was insufficient evidence to convict, this federal reviewing court must review the record *de novo* to determine the sufficiency of the evidence.  See *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003) (*de novo*);  *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000), *cert. denied*, 532 U.S. 947 (2001); *McKenzie v. Smith*, 326 F.3d 721, 726-27 (6th Cir. 2003), *cert. denied*, 540 U.S. 1158 (2004); *Howard v. Bouchard*, 405 F.3d 459, 467 (6th Cir. 2005); *Moldonado v. Wilson*, 416 F.3d 470, 476 (6th Cir. 2005); and see *Wiggins v. Smith*, 539 U.S. 510, 534, 123 S.Ct. 2527, 2542, 156 L.Ed.2d 471 (2003) (*de novo* review when there was no state court decision on second prong of *Strickland* test).

Due Process under the Fourteenth Amendment to the  Constitution prohibits a conviction of any person except upon proof of guilt beyond a reasonable doubt.  *In re Winship*, 397 U.S. 358, 362-63, 90 S. Ct. 1068, 1071-72,  25 L.Ed.2d 368 (l970).  Application of this due process principle in habeas corpus proceedings provides that the "applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. at 324, 99 S.Ct. at  2791-92.   In habeas review, though, the  federal reviewing court must, " give[] full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v.  Virginia*, 443 U.S. at 3l9, 99 S.Ct. at 2789.  Circumstantial evidence, "if substantial and competent, may support a verdict and need not remove every reasonable hypothesis except that of guilt."*McKenzie v. Smith,* 326 F.3d 721, 727 (6th Cir.2003); *Jackson*, 443 U.S. at 317 n. 9. , 99 S.Ct at 2788.  Thus, "[o]nce a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved

3:05 CV 2958                                            4

through a legal conclusion that upon judicial review <u>all</u> <u>of</u> <u>the</u> <u>evidence</u> is to be considered in the light most favorable to the prosecution." *Jackson v. Virginia*, 443 U.S. at 3l9, 99 S.Ct. at 2789 (emphasis in original).  Thus, the test in habeas corpus is "whether after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at 3l9, 99 S.Ct. at 2789 (emphasis in original); *Wright v. West*, 505 U.S. 277, 112 S.Ct. 2482, 120 L.Ed.2d 225, 237 (1992). "Finally, the *Jackson* inquiry does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402, 113 S.Ct. 853, 861, 122 L.Ed.2d 203 (1993).

Hayes arguments focus on in-court identification.[3]  He argues that the victim, a 15-year old boy, did not see the perpetrator's face and that there was no corroborating or forensic evidence in the case. He points to the vague description given for the perpetrator as an African-American male wearing a black sock pulled down to his lips to mask his face , with long hair pulled back in an "orange-sized" bun,  wearing jeans and a black leather waist-length coat, but with nothing regarding the perpetrator's height, weight, age or build. (Trial Tr. 37-39, ECF # 10 @ 11).  The victim did provide a vague description of the perpetrator but he also provided a description of the weapon used, a black handgun that looked like a semi-automatic. (Tr. 40).

---

[3] Generally this claim is raised as a denial of due process for admission of an unreliable identification at trial. *E.g.*, *Manson v. Brathwaite*, 432 U.S. 98 (1977).  However, as presented to the state courts, this first ground was raised as a *Jackson* based challenge to the sufficiency of the evidence.  The *Manson* challenge to the photo array and identification appears under the third ground.

3:05 CV 2958                                    5

Reviewing the record for sufficiency of the evidence, there is no question that the victim provided only a vague description of the perpetrator.  However, the victim did select Hayes' picture out of the photo array without hesitation (Tr. 54-55). There was also strong circumstantial evidence indicating Hayes' involvement including testimony that he owned a black handgun (Tr. 65-67, 114), which he "pitched" because the police were following him (Tr. 118). He had a black leather below-the-waist length coat (Tr.114), and "seldom" wore his hair in a "ponytail"(Tr. 113).  The evidence which condemned him, though,  came from Hayes' girlfriend.

She testified that after Hayes had been arrested in January or February 2003, on another charge, Hayes asked her to check her calendar for November 15, 2002, the date "he was supposed to be involved in an aggravated robbery" to see where she was at 3:00 p.m. on that day (Tr. 109-113).  Hayes' girlfriend testified that at 3:00 p.m. on the day of the robbery she was at work and Hayes had given a pretrial statement to the police indicating that he had dropped his girlfriend off at work at 3:00 p.m. and that this was his alibi because the robbery had occurred approximately 3:00 p.m. on November 15, 2002 (Tr. 74, 110).  Records from her employer, however, indicated that Hayes' girlfriend had started work on that date at 2:30 p.m.(Tr. 111-12).   On cross-examination she further testified that in the fall of  2002 she saw Hayes with "a couple hundred dollars," which Hayes had told her he earned working on cars (Tr. 121).  The victim had testified that between $150 to $200 had been stolen (Tr. 37).

3:05 CV 2958                                        6

Reviewing the evidence *de novo* in the light most favorable to the prosecution clearly indicates that there was sufficient evidence to identify Hayes as the perpetrator for both the aggravated robbery and robbery charges and to support the gun specification.  Hayes is not entitled to habeas corpus relief from his convictions on this ground.

### Ground Two: The Court's verdict is legally insufficient because there is no evidence regarding one of the elements.

Supporting

Facts:        R.C. 2911.01 and 2911.02 require the possession and/or some degree of use of a deadly weapon.  The court not only found there was a deadly weapon, but enhanced the sentence by finding it was operable.  There was no meaningful description of what he believed could be a gun.  This alone renders the finding of an operable firearm inappropriate and legally insufficient thus clearly violating the Petitioner's right to due process.

As presented, this is a narrowly based opposition to the state court decision finding the evidence insufficient to support the operability of the firearm. The state appellate court decision did not make specific reference to the sufficiency of the evidence standard under *Jackson v. Virginia,* but did refer to *State v. Thompkins,* which incorporated the appropriate federal standard from *Jackson v. Virginia* for review of the record for sufficiency of the evidence supporting conviction. See *State v. Thompkins*, 78 Ohio St.3d at 386-87.  *Hayes*, 2004 WL 2785290 ¶23.

Hayes misunderstands the purpose of federal review.  Federal habeas is "an extraordinary remedy and 'will not be allowed to do service for an appeal.'" *Bousley v. U.S.*, 523 U.S. 614, 621,

3:05 CV 2958                                  7

118 S.Ct.1604, 140 L.Ed.2d 828 (1998), quoting *Reed v. Farley*, 592 U.S. 339, 354, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994). Hayes merely repeats arguments based on state and federal law that had been presented in the state courts. For purposes of federal collateral review, all claims adjudicated on their merits by state courts are governed by 28 U.S.C. §2254(d)(1) and (2).  A district court has very restricted Congressionally granted powers for review under 28 U.S.C. §2254(d). See *Williams v. Taylor*, 529 U.S. 362, 402-03, 117 S.Ct. 1495, 146 L.Ed.2d 389 (2000)*; Bell v. Cone*, 535 U.S. 685, 122 S.Ct. 1843, 1852, 152 L.Ed.2d 914 (2002)  The extent of permissible federal review of state convictions as set forth as follows in the statute:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim  - - -
>
> (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding (emphasis supplied).

The phrases "contrary to" and "unreasonable application" are not the same.  *Lockyer v. Andrade*, 538 U.S. 63, 75-76, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003).  Under the "contrary to" standard of review, the state court's decision is "contrary to" clearly established federal law when it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [this] precedent." *Williams v.*

3:05 CV 2958                                  8

*Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Mitchell v. Esparza*, 540

U.S. 12, 15, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003).  Under those circumstances the Supreme Court

has held that the federal court on habeas review may grant the writ.  *Id.*   The phrase "clearly

established Federal law" refers to holdings, as opposed to *dicta,* of the U.S. Supreme Court at the

time of the relevant state court decision.  *Lockyer*, 538 U.S. at 71-72, 123 S.Ct. at 1172; *Williams*

*v. Taylor*, 529 U.S. at 412; *Bell v. Cone*, 535 U.S. at 698.


Under the "unreasonable application" standard, "the state court identifies the correct

governing legal rule from [the Supreme] Court's decisions but unreasonably applies that principle

to the facts of the prisoner's case."  *Williams*, 529 U.S. at 413; *Wiggins v. Smith*, 539 U.S. 510, 520-

21, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003).  This includes both the state court's refusal to

extend and its unreasonable extension of existing legal principles from Supreme Court precedent

to new contexts.  See *Williams*, 529 U.S. at 407.   The unreasonable application of precedent must,

however,  be "objectively" unreasonable.  *Id.,* 529 U.S. at 409, 120 S.Ct. at 1521; *Wiggins, supra*,

at 520-21.


Hayes has not shown that the state decision finding sufficient evidence to support the firearm

enhancement conviction was contrary to or an unreasonable application of clearly established federal

law or was an unreasonable determination of the facts.   The victim reported, "[t]he robber held a

gun to [his] face and told him to not 'make any moves.'"  *Hayes*, 2004 WL 2785290 ¶2.  "At trial,

[the victim] described the gun as being black and looking like a semi-automatic.  *Id.* ¶20.  Hayes

3:05 CV 2958                                        9

conceded that the evidence supported the "deadly weapon" elements of both aggravated robbery and robbery.  See Ohio Revised Code §§2911.01(a) and 2911.02.  However he objects to the three-year sentence enhancement on the firearm specification under Ohio Rev. Code §§2941.145 and 2929.14(D)(1)(a).

There clearly was sufficient evidence supporting the conviction on the firearm specification. The specification under §2941.145 appeared in the indictment (Ex. 1), the prerequisite to the 3-year sentence under §2929.14(D)(1)(a).  For the purpose of the specification and sentencing provision, firearm is defined as follows:

> (1) "Firearm" means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant.  "Firearm" includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable.

> (2) When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely on circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm.

Ohio Rev. Code §2923.11(B)(1) and (B)(2) incorporated by reference under §2929.01(Q).

Under state law there must be evidence beyond a reasonable doubt that a firearm was used and operable at the time of the offense before a defendant can receive a firearm enhancement specification.  *State v. Murphy*, 49 Ohio St. 3d 206 (syllabus), 551 N.E.2d 932 (1990); *State v. Thompkins*, 78 Ohio St. 3d 380, 383, 678 N.E.2d 541 (1997).  Such proof, however, can be

3:05 CV 2958                                                   10

established beyond a reasonable doubt by the testimony of lay witnesses who were in a position to

observe the instrument and the circumstances surrounding the crime.  *Murphy*, 49 Ohio St.3d at the

syllabus; *Thompkins*, 78 Ohio St. at 383.  The brandishing of a firearm by a defendant and the

explicit or implicit threat to shoot it constitutes circumstantial evidence proving the operability of

a firearm. *Thompkins*, 78 Ohio St. at 384-85. The victim testified to having a gun pointed at his face

and being threatened not to move.  Consequently there was sufficient evidence of firearm being

brandished and threat to circumstantially prove the operability of the firearm.


**Ground Three:**          **The petition was denied his right to the effective
                           assistance of counsel.**


Supporting

Facts:                     Trial counsel failed to seek suppression of the out-of-
                           court and in court identifications.  He did not file any
                           suppression motions, nor did he object at trial.
                           Additionally, in looking at the trial as a whole, he
                           failed to use cross-examination to raise serious issues
                           with the states case resulting in a violation of the
                           Petitioner right to the effective assistance of counsel.


        The state appellate court applied the correct test from *Strickland v. Washington*, 466 U.S.

668, 104 S.Ct. 2052, 80 L.Ed.2d. 674 (1984).  See *Hayes*, 2004 WL 2785290 ¶35.   The state

appellate court concluded that the photo array was not unduly suggestive and the in-court

identification was reliable. *Id.* ¶¶ 39-49.  From this the court concluded:  that counsel was not

ineffective for omission of a motion to suppress; that  trial counsel is not ineffective for failing to

object to the in-court identification; and, additionally  that trial counsel had "ably cross-examined

3:05 CV 2958                                11

[the victim] about his identification" of the perpetrator.  *Id.* ¶49.[4]  Hayes carries the burden of establishing that the state court decision was contrary to or an unreasonable application of clearly established law. [5]


An out-of-court photo array identification my be "so unnecessarily suggestive and conducive to irreparable  mistaken identification " to constitute denial of due process of law.  *Manson v. Brathwaite*, 432 U.S. 98, 104, 97 S.Ct. 2243, 2248, 53 L.Ed.2d 140 (1977). "It is the likelihood of misidentification which violates a defendant's right to due process, and it is this which was the basis of the exclusion of evidence . . . . Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous." *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375 382, 34 L.Ed.2d 401 (1972).  The key, though, is whether there was "a very substantial likelihood of irreparable misidentification." *Manson*, 432 U.S. at 116, 97 S.Ct. 2253; *Simmons v. U.S.*, 390 U.S. 377, 384, 88 S.Ct.967, 971, 19 L.Ed.2d 1247 (1968).

───────────────

[4] The state appellate court also made findings with respect to a separate argument of ineffective assistance of trial counsel in allowing Hayes to plead guilty to the escape charge.  *Id.*¶50.  However, this argument does not appear under this ground or its supporting facts.

[5] "Under § 2254(d)'s "unreasonable application" clause, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied *Strickland* incorrectly. See *Bell v. Cone*, 535 U.S. 685, 698-699, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Williams, supra*, at 411, 120 S.Ct. 1495. Rather, it is the habeas applicant's burden to show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner. An " *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams, supra*, at 410, 120 S.Ct. 1495; see *Bell, supra*, at 694, 122 S.Ct. 1843.

*Woodford v. Visciotti*, 537 U.S. 19, 24-25, 123 S.Ct. 357,360, 154 L.Ed.2d 279 (2002)

3:05 CV 2958                                          12

In *Manson*, the Supreme Court rejected a *per se* rule that would exclude an in-court identifications following a suggestive pre-indictment confrontation ( *Id*., 432 U.S. at 110-113), and focused on the "totality of the circumstances" approach, stressing that the admissibility of the in-court identification testimony is determined under the five-factor test from *Neil v. Biggers*, 409 U.S. at 199-200, (*Id.,* 432 U.S. at 114):  (1)  the opportunity of the witness to view the criminal at the time of the crime; (2)  the witness' degree of attention at the time of observation; (3)  the accuracy of the witness's prior description of the criminal; (4)  the level of certainty demonstrated by the witness when confronting the defendant; and (5) the length of time between the crime and the confrontation. *Manson*, 432 U.S. at 114; *Biggers*, 409 U.S. at 199-200.  The court engages in a balancing test, weighing the factors listed in *Neil v. Biggers, supra*, against the "corrupting effect of the suggestive identification itself."  *Manson,*  432 U.S. at 114.

Under *Strickland*, the Supreme Court held that in order to establish ineffective assistance of trial counsel, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment . . .  [and] that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 686-87; *Broom v. Mitchell*, 441 F.3d 392, 408 (6th Cir. 2006) (citing *Strickland*.).  Hayes maintains that trial defense counsel performed deficiently by not moving to suppress the out-of-court photo array identification and not objecting to the victim's in-court identification.

3:05 CV 2958                                            13

The victim testified he observed the perpetrator about 30 to 60 seconds wearing a black sock pulled down to his lips to mask his face (Tr.37-38, 50, 55), and provided only a vague description to the police. That was in November 2002.  It was not until nearly four months later that the victim was asked to see the photo array, March 17, 2003 (Tr. 79), when he selected Hayes from a selection of six photos within 30 seconds (Tr. 54).  The record reveals that while Hayes was in prison on other charges during January or February 2003, a fellow inmate had accused Hayes of this crime (to exculpate himself according to Hayes' girlfriend) (Tr. 75, 125).  Then in March 2003 the police return to the victim with the 6 photos.  Five of the men had their hair in cornrows,  Hayes did not ( Tr. 57).  The victim also testified that, "some of the other guys in there have little faces, and  I could tell that he had – he wasn't a small guy when he came in the store" (Tr. 57).


A suggestive photo array is where the accused's photo stands out.  See *Neil v. Biggers*, 409 U.S. at 198; compare, *U.S. v. Reamey*, 132 Fed. Appx. 613, 616 (6th  Cir. May 23,2005)("subjects of the photo array were all African-American males of similar build, color, complexion and hairstyle.").  The state appellate court found that Hayes' photo did not stand out because the photos were from men of the same race, with similar facial features and similar skin tone, and that Hayes and three others had  hair long enough to be braided.  See *Hayes*, 2004 WL 2785290 ¶43.  The state decision further  found the photo array was not suggestive in analysis that applied all five *Neil v. Biggers* factors.  See *Hayes*, 2004 WL 2785290 ¶46.

3:05 CV 2958                                        14

Hayes must demonstrate that  the state court decision finding  trial counsel's performance was reasonable because the photo array was not unduly suggestive, was an "objectively unreasonable" application of clearly established federal law. See *Rompilla v. Beard*, 545 U.S. 374, 380, 125 S.Ct. 2456, 2462, 162 L.Ed.2d 360 (2005); *Wiggins v. Smith*, 539 U.S. at 520-21.  This task is difficult first because the five-factor test from *Manson* and *Neil* is more of a general test which permits a substantial degree of judicial discretion. As explained in *Yarborough v. Alvarado*:

> "The term " 'unreasonable' " is "a common term in the legal world and, accordingly, federal judges are familiar with its meaning." [ *Williams*, 529 U.S.], at 410, 120 S.Ct. 1495. At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."

*Id.*, 541 U.S. 652, 663-664, 124 S.Ct. 2140, 2149, 158 L.Ed.2d 938 (2004).


Secondly, the victim had independent recall of details which he had not verbalized to the police, such as the perpetrator's broad-shouldered build and distinctive lips, and the victim had been attentive. See *Hayes*, ¶45.  Hayes fails to demonstrate that the state court decision balancing the five factors was incorrect, much less, "objectively unreasonable."


Nevertheless, even assuming that trial counsel's performance fell below the objective standard of reasonableness for not moving to suppress, objecting, or engaging in more thorough

3:05 CV 2958                                15

cross-examination, Hayes was not prejudiced and the error was harmless.  It is not enough to show poor legal practice, "there is a further question about prejudice, that is, whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Rompilla*, 545 U.S. at 390, 125 S.Ct. at 2467, quoting, *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. In other words, is there a likelihood that counsel's arguable deficient performance caused a different result or undermined confidence in the outcome. *Rompilla*, *supra*, at 393, S.Ct. at 2469.  Under the harmless error rule any error must raise grave doubt about whether trial error had a substantial and injurious effect or influence on a jury's verdict.  *O'Neal v. McAnich*, 513 U.S. 432, 438-39, 115 S.Ct. 992, 995-96, 130 L.Ed.2d 947 (1995); *Brecht v. Abrahamson*, 507 U.S. 619, 638, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); *Kotteakos v. U.S.*, 228 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946) (cited by *Brecht* and *O'Neal).*  "While the burden of persuasion on harmless error review falls on a petitioner, he need not prove that the error was outcome-determinative; instead he must merely remove any assurances that the error did not affect the outcome."  *Ruimveld v. Birkett*, 404 F.3d 1006, 1014 (6th Cir. 2005); *Beck v. Haik*, 377 F.3d 624, 635 (6th Cir. 2004); and see *Brecht*, 507 U.S. at 637.


        Suppression of the in-court identification by the victim and testimony on the photo array would not have been fatal to the state's case.  Because of the strong circumstantial evidence elicited through Hayes' girlfriend's testimony -- the outcome would not have been affected. Ohio permits identification by circumstantial evidence. Eg., *State v. Curtis*, 54 Ohio St.2d 128, 135, 375 N.E.2d 52, 8 O.O. 3d 121 (1978); *State v. Scott*, 3 Ohio App.2d 239, 244-45, 210 N.E.2d 289 (1965).

3:05 CV 2958                                    16

Consequently, counsel's failure to obtain suppression (assuming counsel would prevailed on this issue), would assuredly not have altered the outcome.


### *CONCLUSION AND RECOMMENDATION*

Following review of the petition and applicable law, Hayes has not demonstrated that he is in custody pursuant to judgment of a State court which was the result of a decision that was contrary to or involved the unreasonable application of Federal law as determined by the Supreme Court of the United States or was the result of a decision based on an unreasonable determination of the facts in light of the evidence in the State court proceeding. See 28 U.S.C. §2254(d)(1) and (2). There has been no demonstrated need for an evidentiary hearing. It is recommended that the petitioner's application for habeas corpus be denied.


                                        _____ s/James S. Gallas _____
                                        United States Magistrate Judge


*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).


Dated: December 28, 2006